Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Brian M. Donovan
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>$43,112.00 U.S. CURRENCY,<br>2013 JEEP GRAND CHEROKEE,<br>2015 CHEVROLET SILVERADO,<br><br>　　　　　　　Defendants. | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

Plaintiff, United States of America, by its attorneys, Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Brian M. Donovan, Assistant U.S. Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**I.　　NATURE OF THE ACTION**

1.　　This is an action to forfeit and condemn to the use and benefit of the United States of America the above-captioned Defendant property seized by the

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -1

United States Drug Enforcement Administration for violations of Title II of the Controlled Substances Act, 21 U.S.C. § 801 et seq.

## II.    THE DEFENDANT(S) *IN REM*

2. The Defendant property consists of the following property:

- $16,360.00 U.S. currency;

- $26,752.00 U.S. currency;

- a 2013 Jeep Grand Cherokee, Washington License Number: BVV8759, VIN:  1C4RJFDJXDC580971; and,

- a 2015 Chevrolet Silverado 2500, Washington License Number: C36459X. VIN: 1GC1KXE89FF633849

## III.    JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant property.  This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).  This Court has *in rem* jurisdiction over the Defendant property under 28 U.S.C. § 1355(b).

4. Upon the filing of this complaint, Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -2

## IV.   BASIS FOR FORFEITURE

6. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 5 above.

7. The Defendant property is liable to condemnation and forfeiture to the United States for its use, in accordance with the provisions of 21 U.S.C. § 881(a)(6), because it constitutes: 1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; and/or 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## V.   FACTS

A. <u>2020 Investigation</u>

8. On March 3, 2020, Drug Enforcement Agency (DEA) Tri Cities Task Force Officers (TFO) Daniel Ward and Chris Bennett interviewed a former confidential source (CD1) in Pasco, Washington.[1] CD1 identified an individual that

---

[1] In January 2016, CD1 was signed up with Tri-Cities METRO Task Force as a Confidential Informant (CI). On February 5, 2016, CD1 was observed by METRO Detectives entering a known drug residence without direction from METRO Detectives. CD1 was contacted and advised that he/she was at the residence and purchased heroin due to his/her opioid addiction. CD1 was terminated as a CI for the violation of his/her contract at the time. As noted above, in March 2020, CD1 was in custody on unrelated matters and interviewed. Based in part on the information provided, March 6, 2020, CD1 was re-activated by Tri-Cities METRO as a CI and agreed to provide information for consideration on an outstanding felony crime. CD1 at this time had been convicted of two felony crimes, two gross misdemeanor crimes,

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -3

goes by the name of "Chuy" as their source of fentanyl laced tablets. TFO Ward knew "Chuy" to be Marcelino Flores from prior interviews and investigations. It is not uncommon for drug traffickers to communicate services under the name of a fictitious person for the purpose of concealing their drug trafficking activities and to insulate themselves from detection by law enforcement.

9. CD1 stated they knew Marcelino Flores (M-Flores) for three years as well as M-Flores's brother, Juan Flores (J-Flores). CD1 stated they knew M-Flores to sell large quantities of fentanyl laced tablets, crystal "ice" methamphetamine, black tar heroin, cocaine, marijuana, and firearms.

10. TFO Ward reviewed numerous text messages between CD1 and M-Flores related to purchasing narcotics. TFO Ward did not see any responses on the text threads from M-Flores as CD1 advised that M-Flores did not like to text in reference to narcotics. When TFO Ward cross referenced the phone number CD1 provided as M-Flores's number with the phone number M-Flores had given law enforcement from previous contacts, it was the same number: 509-439-3913.

11. Administrative subpoenas to Cellco/Verizon Wireless Corporation for the dates of January 6, 2020, through May 18, 2020, for the subscriber information and toll records related to 509-439-3913 confirmed the account holder as M-Flores with the associated address of 1101 S. 10th Street Sunnyside, Washington. The address is

---

and two misdemeanor crimes. On March 17, 2020, CD1 was terminated as a CI at his/her request. Plaintiff is not aware of any issues as to reliability with CD1.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -4

associated with M-Flores's parents. The phone number at that time was active, with an activation date of September 27, 2018.

12. TFO Ward requested CD1 to place a recorded phone call to M-Flores and order 200 fentanyl-laced tablets. CD1 advised TFO Ward that fentanyl-laced tablets were referred to as "Skittles" when ordering from M-Flores. When CD1 called M-Flores to ask for 200 "Skittles," M-Flores requested that CD1 make payment to him with food stamps for the 200 "Skittles."

13. On March 6, 2020, TFO Thomas Orth observed several Snapchat videos posted by "Howie Flores," an additional nickname utilized by M-Flores. The first video was of a driveway and vehicles with a male voice asking which vehicle he should drive for the day. TFO Ward recognized the location as 2219 Carriage Avenue, Richland, Washington. TFO Ward knew that address to be associated with M-Flores through contacts at the residence and prior investigation.

14. On the same day, TFO Orth received a query from the Washington State Department of Licensing for the vehicles registered to Virginia Vargas (V-Vargas), identified as the girlfriend of M-Flores. The query showed 16 vehicles registered to her. Drug traffickers often keep items registered in the names of other trusted individuals and often store them with the trusted individuals in order to avoid discovery by law enforcement.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -5

15. TFO Orth viewed other videos posted by "Howie Flores" that positively identified the male recording as M-Flores and featured advertising for the sale of what TFO Orth recognized from his training and experience to be marijuana.

16. On June 5, 2020, TFO Ward observed via Snapchat that M-Flores was in Los Angeles, California. Special Agent (SA) Kurt Mitchell ran a query on the white Lexus coupe bearing a California license plate #8MCM034 that it appeared M-Flores and V-Vargas were driving. The white Lexus coupe was registered to Edwin Salvador Campos, of Van Nuys, California.

17. On June 6, 2020, TFO Orth monitored M-Flores's GPS cellular ping headed northbound on Highway 97 through Oregon towards Washington. TFO Orth observed the Lexus arrive in Wasco, Oregon and positively identified the driver as M-Flores and the front seat passenger as V-Vargas.

18. TFO Orth contacted Washington State Patrol K-9 Trooper Michael Christenson and requested that he perform a stop of the white Lexus. After the traffic stop, K-9 Trooper Christenson reported to TFO Orth that he ran his K-9 around the exterior of the white Lexus and searched the interior of the vehicle and did not locate any contraband.

19. On June 16, 2020, while monitoring M-Flores's authorized GPS cellular ping, TFO Orth noticed M-Flores was traveling to Spokane, Washington. SA Savage located M-Flores in the area of the Northtown Mall, Spokane, Washington. SA

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -6

Wiseman located a black Toyota Sequoia bearing Washington place #BSC2984 registered to V-Vargas, parked in the parking lot north of Macy's.

20. SA Savage observed M-Flores and a young Hispanic male exit the mall and walk to the Toyota. Shortly after, a Hispanic female and a juvenile exited the mall. SA Savage observed M-Flores enter the driver's seat of the Toyota Sequoia and the female – believed to be V-Vargas – enter the front passenger seat, and four individuals enter the back seats. M-Flores repositioned the Toyota Sequoia in the mall parking lot.

21. SA Savage observed a male, later identified as Christopher Valle, hand a flat dark bag, approximately the size of a bank bag, into the passenger side of the Toyota Sequoia to the female passenger – believed to be V-Vargas. SA Savage did not see Valle receive anything from the Toyota Sequoia. The transfer of bag is consistent with a hand delivery of drug proceeds or a cash payment to M-Flores.

22. SA Savage observed Valle leave the Toyota Sequoia and walk to a silver Toyota Tacoma bearing Washington plate #C68881R. Per SA Savage's request, Spokane Police Department Sgt Beau Brannon conducted a traffic stop on the Toyota Tacoma and identified the driver as Valle.

23. Shortly after the traffic stop, TFO Orth noticed that M-Flores's GPS pings stopped, and the following day M-Flores had discontinued his cellular device. TFO Orth believes Valle likely contacted M-Flores after the traffic stop and advised him of the traffic stop the day before and that is why M-Flores disconnected the 509-

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -7

439-3913 number associated with him. After M-Flores disconnected his phone, he became very difficult to contract to further the investigation. It was not until June 2021 that TFO Orth re-engaged the investigation.

B.   Controlled Buy From M-Flores and Further Investigation

24.   In June 2021, TFO Orth was advised of a METRO Confidential Source (CS) who advised that they could purchase fentanyl tablets from M-Flores, as they had known M-Flores for a few years and had purchased fentanyl tablets from M-Flores in the past. The CS stated that J-Flores was working with M-Flores in the distribution of fentanyl and that M-Flores was J-Flores's source of supply. The CS stated J-Flores supplied small quantities of fentanyl tablets and M-Flores distributed the larger "boat" (1,000 fentanyl tablets) quantities of fentanyl tablets.

25.   On July 8, 2021, Detective Ward, SA Lindsey Wood, and TFO Orth met with the CS at a pre-determined location in Richland, Washington. The CS and their vehicle were searched, and no contraband or money was located.

26.   TFO Orth requested CS call M-Flores's current identified phone number- 509-439-1530. When M-Flores did not answer, CS texted M-Flores asking to meet up to purchase 50 fentanyl tablets. M-Flores responded and set up a meeting at Leslie Groves Park (40 Park Street, Richland, WA).

27.   Detective Ward gave the CS covert audio/video recording devices, $350 U.S. currency, and escorted the CS to Leslie Groves Park. CS contacted M-Flores via text that they arrived. Shortly thereafter, M-Flores responded to the CS.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -8

28. METRO Detective Miguel Ayala advised surveillance units that M-Flores had entered the passenger side of a white Chevrolet Silverado bearing Washington plates #C36459X registered to Mary Louis Olvera (one of the Defendant vehicles identified herein) parked in the driveway of the Carriage Avenue residence with an unknown male adult in the driver's side. M-Flores drove the Defendant Chevrolet Silverado to the buy location without making any stops.

29. Detective Nash advised surveillance units of the subject vehicle's arrival and parked next to CS's vehicle. Detective Nash advised surveillance units that M-Flores exited the Defendant Chevrolet Silverado, went to the CS's vehicle, and conducted a hand-to-hand transaction with the CS.

30. During the transaction, M-Flores spoke to the CS regarding the distribution of fentanyl, complained about not finding trustworthy distributors, and discussed how M-Flores checks them out before he will utilize them to distribute his product or sell to as customers. M-Flores also bragged about his $40,000 cash purchase of the Defendant Chevrolet Silverado. TFO Orth knows from employment records and surveillance and prior investigation, that M-Flores does not have legitimate employment.

31. As M-Flores left the buy, Detective Nash and additional surveillance units followed the Defendant Chevrolet Silverado. Detective Nash noted the vehicle was driving in circles around the area conducting counter surveillance on its way back to the Carriage Avenue residence.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -9

32. TFO Orth and Detective Ward escorted the CS to a predetermined location. There, the CS relinquished a clear sandwich bag containing suspected blue fentanyl tablets marked M-30. The CS and their vehicle were searched by TFO Orth in which no money or contraband was located. The CS confirmed the events and advised that they handed the $350 of U.S. currency to M-Flores in exchange for the suspected fentanyl tablets. The fentanyl was tested at Western States Laboratory and yielded a positive result for the presence of fentanyl.

33. On September 10, 2021, while conducting surveillance of the Carriage Avenue residence, detectives observed the Defendant Chevrolet Silverado parked on the street in front of the home and a white Chevrolet Tahoe WA#BJB0026 parked in the driveway. Detective Ward observed M-Flores and J-Flores enter the white Chevrolet Tahoe.

34. Surveillance units followed the Chevrolet Tahoe to the Regency Park Apartments (3003 Queensgate Drive, Richland, Washington). M-Flores and J-Flores exited the Chevrolet Tahoe and entered the breezeway of Building 8 and walked up to the 3rd floor. In July 2021, Detective Ward received information from the CS that Maila Burrows and Kari Berg live in building 8 of the Regency Park Apartments. Detective Ward knew from prior investigations that Burrows and Berg have been identified as fentanyl tablet distributors operating in the Tri-Cities, Washington area. The CS advised Detective Ward that M-Flores was their fentanyl supply source.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -10

35. On October 1, 2021, the CS was instructed by Detective Ward to call M-Flores and talk about larger amount purchases of fentanyl. M-Flores did not answer. TFO Orth and Detective Ward know M-Flores is a "boat" (1,000 fentanyl tablets) level distributor and suspect M-Flores was not answering due to his reluctance to sell small quantities of fentanyl tablets.

C. <u>Search of M-Flores' Residence and Vehicles</u>

36. In October 2021, agents discovered M-Flores and V-Vargas were in the process of moving to a new residence located at 1101 Thor Avenue, Benton City, WA. On October 8, 2021, the agents obtained a federal search warrant for the Thor Avenue residence.

37. On the morning of October 12, 2021, DEA agents, METRO drug task force agents, and members of the Kennewick Police Department and Benton County Sheriff's Office established surveillance around the Thor Avenue residence. Agents observed a white Jeep Grand Cherokee, bearing Washington State license plate #BVV8759 (one of the Defendant vehicles identified herein) leave the Thor Avenue residence. M-Flores and V-Vargas were in the Defendant Jeep Cherokee.

38. Agents coordinated with Benton County Officers to conduct a traffic stop on the Defendant Jeep Cherokee. Officers placed M-Flores into custody pursuant to the federal arrest warrant issued for him.

39. During the traffic stop, other agents executed the search warrant for the Thor Avenue residence. A juvenile male was the only occupant in the property when

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -11

the warrant was executed. Upon entry, TFO Slocombe observed the Thor Avenue residence was mostly empty. The detached garage was full of possessions staged to go into the house; there were also two vehicles inside, but most items were in boxes.

40. During the search of the Thor Avenue residence, the following items were located and seized:

- 168.3 gross grams of blue pills marked with M30 suspected to contain fentanyl in the basement living room;
- 123.2 gross grams of suspected psilocybin mushrooms;
- 249.8 gross grams of suspected marijuana;
- $26,752.00 U.S. currency in a suitcase in the master bedroom on the top shelf of the master closet;
- One box of Hornady ammunition 45 auto;
- One box PMC Bronze ammunition 45 auto;
- Two Springfield Armory 45 auto magazines;
- Nine boxes of miscellaneous ammunition;
- .45 caliber pistol found in a box labeled baby clothes in the detached garage;
- One CMMG brand short-barreled rifle with a loaded drum found in a box labeled "Dad's stuff" in the detached garage;
- One box of 45 ammunition and two Glock magazines found in the safe in the detached garage.

41. During the search of the Thor Avenue residence, agents executed a search warrant on the Defendant Chevrolet Silverado, which was located on the property. During the search, agents located a blue Motorola cellular phone on the rear seat of the vehicle. Agents also located $220 in U.S. currency in the sunglasses

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -12

compartment in the vehicle. When agents removed the U.S. currency, they located a small clear bag containing four suspected fentanyl tablets within the U.S. currency.

42.     When agents asked V-Vargas if the U.S. currency located within the vehicle was belonged to her, she stated, "Yes." When V-Vargas was advised that the U.S. currency was co-mingled with suspected fentanyl, she contradicted herself and stated that the U.S. currency did not belong to her.

43.     On October 14, 2021, TFO Orth executed a federal search warrant on the Defendant Jeep Cherokee. During the search, TFO Orth located a blue Motorola cell phone in the driver's door compartment and a fanny pack in the front passenger seat containing $16,360 U.S. currency wrapped in rubber bands. In the center console, agents located M-Flores's Washington State Driver's License with the listed address on the license being 1101 S 10th Street, Sunnyside, Washington. During the vehicle stop on October 12, 2021, when questioned about the contents of the fanny pack, V-Vargas claimed it contained $10,000 in cash from their t-shirt business.

C.     Interview of M-Flores

44.     Following the traffic stop on October 12, 2021, M-Flores was placed into custody. Agents met with M-Flores and interviewed him about his criminal conduct. During his post-*Miranda* warning interview, M-Flores stated he had been in the business of selling drugs for approximately two years because he needed to make money. SA Mitchell advised M-Flores that the people searching their Thor Avenue residence located a bag of approximately 1,000 fentanyl pills on the table in the

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -13

downstairs of the residence. M-Flores stated that was consistent with how much he normally had. As the interview progressed, M-Flores was being evasive in his answering and advised the agents that it would be better that he did not continue to talk.

  D. <u>Interviews of V-Vargas</u>

  45. Following the traffic stop of M-Flores and V-Vargas on October 12, 2021, agents questioned V-Vargas after reading her a *Miranda* warning. When interviewed by TFO Ward, V-Vargas stated she knew nothing about M-Flores's drug trafficking activities. TFO Ward then asked V-Vargas about her and M-Flores's home business(es) and V-Vargas told the agents her husband had a t-shirt/decal business. She estimated earning $3,200 in the first month and $9,500 after that, but did not specify whether that was revenue or profit. V-Vargas also stated she and M-Flores made money through their bouncy house business and through M-Flores's work as a chef. V-Vargas stated that M-Flores and a friend would go out of town on trips to cook for events and parties.

  46. TFO Ward then asked V-Vargas if there were any firearms located in the Thor Avenue residence and she stated there was a .45 caliber gun in the safe, in the outside shop. TFO Ward and SA Mitchell subsequently transported V-Vargas back to the Thor Avenue residence.

  47. Back at the Thor Avenue residence, while the search warrant was being executed, GS Savage interviewed V-Vargas. V-Vargas stated she worked in the

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -14

medical field at the same place for approximately the last 9 years and earned approximately $35,000. V-Vargas stated the family made $11,000 in 2020 from their seasonal bounce house business. When asked how much money V-Vargas made from their t-shirt business she stated approximately $3,200 in their first quarter of 2021, $8,500 in the second quarter of 2021, and approximately $10,000 for their third quarter 2021. When asked is V-Vargas had records of her sales and kept books for the business she stated she did not.

48.  V-Vargas told GS Savage they were slated to make approximately $168,000 on the sale of the Carriage Avenue residence and that $100,000 was going to be used as a down payment on their pending Thor Avenue residence purchase, with the remaining $68,000 to be used to remodel. GS Savage asked if they had ever come into any significant money and V-Vargas stated she received approximately $90,000 through Social Security Administration for her children after her father died a few years prior. V-Vargas stated some of that money was used to purchase the Carriage Avenue residence.

49.  In February 2020, Investigative Analyst Brendan Beckley submitted an administrative subpoena to Washington State Employment Security Department of the employment history and unemployment history of V-Vargas. Washington State Employment Security Department reported that V-Vargas was employed by Quality Centers, Walla Walla, Washington. V-Vargas reported wages of $26,597.82 in 2018 and $29,048.60 in 2019. When asked if the income from her businesses were reported

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -15

on the W-2s, V-Vargas stated that the income generated from the side business was not enough to meet the threshold for reportable income.

E.  Indictment of M-Flores

50. On October 6, 2021, M-Flores was indicted by a federal grand jury for one count of Distribution of Fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) based on the July 8, 2021, controlled buy described herein in the matter *United States v. Marcelino Flores, et al.*, 4:21-cr-6036-SAB (E.D. Wash.).

51. On November 3, 2021, the grand jury returned a Superseding Indictment against Marcelino Flores and others, charging M-Flores with one count of Conspiracy to Distribute 40 Grams or More of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(b)(vi) and 846; one count of Distribution of Fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and one count of Possession with Intent to Distribute 40 grams or More of Fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi). ECF No. 31. The Superseding Indictment included a Notice of Forfeiture notifying M-Flores of the United States' intention to seek forfeiture of the Defendant currency identified herein.

52. On January 7, 2022, a Bill of Particulars for Forfeiture of Property was filed by the United States. ECF No. 106. It provided notice to M-Flores of the United States' intention to seek forfeiture of the Defendant Chevy Silverado and Defendant Jeep Cherokee. *Id.*

53. The parties thereafter negotiated a plea agreement, which provided for forfeiture of the Defendant property. A change of plea hearing was scheduled for

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -16

February 14, 2023. However, prior to the hearing, M-Flores fled and is now a fugitive. ECF No. 172.

F.  Information Obtained from Co-Defendants

54. The November 3, 2021, Superseding Indictment referenced above included counts against M-Flores's co-defendants Matthew Young ("Young") and Bailey Renee Nelson ("Nelson"). *United States v. Marcelino Flores, et al.*, 4:21-cr-6036-SAB (E.D. Wash.), ECF Nos. 32 and 33. The Superseding Indictment charged Young and Nelson with one count of Conspiracy to Distribute 40 Grams or More of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(b)(vi) and 846; one count of Possession with Intent to Distribute Fentanyl and Aiding and Abetting the Same in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; and one count of Possession with Intent to Distribute 50 grams or More of Actual (Pure) Methamphetamine and Aiding and Abetting the Same in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) and 18 U.S.C. § 2.

55. Nelson pled guilty to one count of Conspiracy to Distribute 40 Grams or More of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(b)(vi) and 846 on January 25, 2023. ECF No. 159. Young also pled guilty to one count of Conspiracy to Distribute 40 Grams or More of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(b)(vi) and 846 on February 21, 2023. ECF No. 175. The count to which both Nelson and Young pled guilty arose out of their conspiracy to distribute fentanyl with M-Flores. In their plea agreements, both Nelson and Young admitted that M-Flores

was a source of supply of fentanyl-laced pills for them. ECF No. 159 at 11; ECF No. 175 at 11. They also admitted that M-Flores supplied them fentanyl-laced pills during the course of their conspiracy identified as occurring from at least July 2021 through October 14, 2021. *Id.* Nelson and Young further admitted that M-Flores would supply them approximately 500 pills per week at $6 a pill (approximate total price of $3,000) for approximately four to five months prior to M-Flores's arrest. *Id.*

## VI. CONCLUSION

WHEREFORE, Plaintiff requests that the Clerk of the Court issue a warrant for the arrest of the Defendant property; that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the property; that the Defendant property be forfeited and condemned to the United States of America; that Plaintiff be awarded its costs and disbursements in this action and for such other and further relief as this Court deems proper and just.

DATED this 27th day of December 2023.

Vanessa R. Waldref
United States Attorney

*s/ Brian M. Donovan*
Brian M. Donovan
Assistant United States Attorney

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -18

<u>VERIFICATION</u>

I, Lindsey V. Wood, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Drug Enforcement Administration (DEA), in Tri-Cities, Washington that I have read the foregoing Verified Complaint *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except those matters herein stated to be alleged on information and belief, and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States and information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing information is true and correct.

DATED this ___26___ day of December 2023.

*/s/ L Wood*
Lindsey V. Wood, Special Agent
Drug Enforcement Administration

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* -19